# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| VENETIA BRIDE, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:24-cv-00054-RK<br>) |
| GOODLEAP, LLC, | )<br>) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Goodleap, LLC's ("Goodleap") motion to compel arbitration. (Doc. 10.) The motion is fully briefed. (Docs. 11, 13, 17.) After careful consideration and for the reasons explained below, the Court **ORDERS** that Goodleap's motion to compel arbitration is **DENIED without prejudice**.

### Background and Procedural Posture[1]

Venetia Bride ("Plaintiff" or "Mrs. Bride") alleges, *inter alia*, that Goodleap "invaded her privacy by using or obtaining her credit reports in the context of allegedly financing a contract between her husband," Mark Bride ("Mr. Bride"), and 816 Solar Pro for the installation of solar panels on their residential home.[2] (Doc. 13 at 1.) On August 16, 2023, 816 Solar Pro sales representatives visited Mr. and Mrs. Bride's home to discuss the benefits of solar-generated electricity. (Doc. 13-1 at ¶ 3.) On that date, Mr. Bride electronically signed a "PV Solar Design & Installation Agreement," ("816 Solar Pro Contract") with 816 Solar Pro for the design and installation of a PV solar system for the Bride's residence. (Doc. 12-1.) Mr. and Mrs. Bride's electronic signatures and initials appear on a financing agreement with Goodleap ("Goodleap Contract"), for the purchase of the 816 Solar Pro solar system, also purportedly signed on August 16, 2023. (Doc. 12-2.) Plaintiff disputes signing the Goodleap Contract. In a declaration attached to Plaintiff's opposition to the motion to compel, Plaintiff acknowledges she was initially present

---

[1] Because the parties have submitted evidence outside the pleadings corresponding to Goodleap's motion to compel arbitration, the Court treats the motion akin to a motion for summary judgment, viewing the evidence and all reasonable inferences in the record in the light most favorable to Plaintiff as the non-moving party. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 850-51 (8th Cir. 2022).

[2] Mr. Bride and 816 Solar Pro are not parties to this case.

for a conversation with 816 Solar Pro sales representatives on August 16, 2023, and states that she is "informed and believe[s] that at the end of" the discussion held at the Bride's home on August 16, 2023, Mr. Bride "signed a contract for solar panels with 816 Solar Pro." (Doc. 13-1 at ¶ 4-5.) However, Plaintiff states she "was not present for the signing and was not in the room when the discussion ended." (*Id.* at ¶ 6.) Specifically in reference to the Goodleap Contract, Plaintiff states:

> On or about October 26, 2023, Goodleap sent a welcome email to my husband attaching a contract with different terms than the 816 Solar Pro Contract and allegedly bearing my signature. This was the first time that I saw the Goodleap Contract. I did not sign the Goodleap Contract, nor did I authorize anyone to use my signature on the Goodleap Contract.

(*Id.* at ¶ 7-8.)

> On October 27, 2023, a Goodleap employee called Plaintiff:
>
> [Goodleap employee]: Hi, this is Kim from Goodleap on a recorded line, and I'm calling for Mark. Is he available? Or Venetia? Mark or Venetia?
>
> [Plaintiff]: You're talking with Venetia. I'm in Arizona, and he's up in Missouri.
>
> [Goodleap employee]: Okay, that's okay. I just wanted to go over the loan terms for your new solar from 816 Solar Pros. Is it good to go ahead and go over this with you?
>
> [Plaintiff]: Sure.
>
> [Goodleap employee]: Perfect. [Have] the solar panels been installed?
>
> [Plaintiff]: Yes.
>
> [Goodleap employee]: Perfect, alright. So, we emailed you a closing certificate. It lists all of the final terms of the loan on that document, and we emailed that to bride875@gmail.com.
>
> [Plaintiff]: Okay, that's Mark. I'll give him a ring and let him know to look for it.
>
> [Goodleap employee]: Okay, would you like me to also email you? I mean we can add you on here, also.
>
> [Plaintiff]: Oh, it's not necessary.
>
> [Goodleap employee]: Okay, alright, that's fine.

[Plaintiff]: I think just keeping Mark on there [sic]. He dealt more with this project than me, um, he normally does, so I think he would be the best.

[Goodleap employee]: Okay, no worries. Can you confirm that you have a 25-year loan term?

[Plaintiff]: Uh, on our mortgage?

[Goodleap employee]: No, on your solar loan.

[Plaintiff]: I have no idea. Mark would be the person. I don't know, I didn't get to see the facts.

[Goodleap employee]: Oh, you didn't?

[Plaintiff]: No.

[Goodleap employee]: Alright, well. This is the only phone number that I do have on file.

[Plaintiff]: That's unusual.

[Goodleap employee]: I know, right.

[Plaintiff]: Because we both sat down with, I forgot his name. We both sat down with the salesperson and . . . after a while, I got up and walked away and let Mark, you know, make the final decision on it.

[Goodleap employee]: Okay, well, would you like me to enter his phone number and call him to go over this?

[Plaintiff]: Yeah, I think that would be best.

(Doc. 24-1, Plaintiff call at 0:19 – 2:27.)

Also on October 27, 2023, another Goodleap employee called Mr. Bride. The Goodleap employee confirmed Mr. Bride's identity and told Mr. Bride that the purpose of the call was "to go over" the terms of the Goodleap Contract. (Doc. 24-1, Mr. Bride Oct. 27 call at 0:57 – 1:30.) After a few questions, the Goodleap employee asked Mr. Bride: "And, I do see that we have a co-borrower on the loan here as well. Can you confirm her name for me, please?" (*Id.* at 1:30 – 3:12.) Mr. Bride replied, "Yes, Venetia Bride." (*Id.*) The Goodleap employee asked for "good" contact information for Mrs. Bride, and Mr. Bride told the employee: "For whatever reason you

3

all are calling her phone instead of mine. . . . I would prefer you all contact me regarding anything solar." (*Id.*)

Mr. Bride spoke with another Goodleap employee by phone on October 31, 2023, to report a discrepancy discovered between the Goodleap Contract terms and the representations made by the 816 Solar Pro sales representative to him on August 16, 2023. During the call, he stated: "So anyway, the bottom line is, is we were told one thing and you know, I [previously] told [a Goodleap employee about] this and he didn't sound real happy about it, but I wanted to check with my wife to see if any of that sounded familiar and she said, 'Absolutely not, because we would not agree to 222 bucks [sic] a month.'" (Doc. 24-1, Mr. Bride Oct. 31 call at 5:42.)

The Goodleap Contract contains an Arbitration Agreement, which provides that "all claims and disputes arising out of or relating to [the Goodleap Contract] shall be resolved by binding arbitration." (Doc. 12-2 at 12.) Further: "The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative waivers (collectively, "arbitrability" issues)." (*Id*) Plaintiff's electronic signature appears on the Goodleap Contract five times, and her initials appear four times. (*Id.*) According to the DocuSign Certificate of Completion, Mr. Bride viewed the contract at 9:56 a.m. and he signed it at 10:06 a.m.; Plaintiff viewed the contract at 10:07 a.m. and she signed it at 10:08 a.m. (Doc. 12-3 at 2.) During an evidentiary hearing on this motion,[3] Goodleap's counsel represented to the Court that Mr. and Mrs. Bride electronically signed the Goodleap Contract on 816 Solar Pro's device while the sales representatives were in their home.

Plaintiff filed her complaint against Goodleap on January 22, 2024, asserting three claims: (1) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (2) request for declaratory judgment declaring Goodleap's UCC financing statement claiming security interest in Plaintiff's home is void; and (3) slander of title. Goodleap moves the Court to compel arbitration of Plaintiff's claims. (Doc. 10.)

---

[3] The Court held a hearing on the motion to compel arbitration at Goodleap's request, pursuant to the Court's policy permitting oral argument for new lawyers.

## Legal Standard

Arbitration agreements are enforceable under federal law in federal court. *See* 9 U.S.C. § 2. Accordingly, under 9 U.S.C. § 3, a party may seek a stay of a federal lawsuit "upon any issue referable to arbitration under an agreement in writing for such arbitration." Furthermore, any "party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4).

"Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists and the dispute falls within the scope of that agreement." *Duncan v. Int'l Markets Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) (cleaned up). While doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, this presumption does not apply to disputes concerning whether an agreement to arbitrate has been made because "a party cannot be compelled to arbitrate unless it has contractually agreed to be bound by arbitration." *Id.*; *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). Goodleap, as the party seeking to compel litigation to arbitration, "bears the burden of proving that there was a valid and enforceable [arbitration] agreement." *Duncan*, 20 F.4th at 402.

When a motion to compel arbitration relies on matters outside of the pleadings, as is the case here, the Court applies a standard akin to a motion for summary judgment. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 882 n.8 (8th Cir. 2017) (citing *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014)). The movant must first "inform the district court of the basis for its motion" and "identify portions of the record which it believes demonstrate the absence of a genuine issue of material fact" regarding the arbitration agreement. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (cleaned up). If the movant meets this burden, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (cleaned up). The Court may not compel arbitration where any genuine issue of material fact remains as to whether a valid arbitration agreement exists. *Neb. Mach. Co.*, 762 F.3d at 744. The record is viewed in the light most favorable to Plaintiff, the nonmovant. *Id.*

Finally, "state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal

substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Anhui Powerguard Tech. Co. v. DRE Health Corp.*, 95 F.4th 1146, 1149 (8th Cir. 2024) (cleaned up).

**Discussion**

Goodleap moves the Court to compel arbitration of Plaintiff's claims, arguing that the evidence establishes that Plaintiff signed the Goodleap Contract, thereby assenting to arbitrate her claims against Goodleap. In response, Plaintiff contends she did not sign the Goodleap Contract or authorize anyone else to do so on her behalf, and thus a genuine issue of material fact exists concerning whether she agreed to arbitrate her claims against Goodleap. Plaintiff maintains that the evidence must be submitted to the jury on this limited issue.[4]

Initially, Goodleap points to the delegation clause within the arbitration agreement in the Goodleap Contract, which provides that the arbitrator shall "decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative waivers." Goodleap argues that the text of the delegation clause "clearly and unquestionably evinces the parties' intent to arbitrate issues of arbitrability," and because Plaintiff does not specifically challenge the delegation clause, the Court must treat it as valid and compel arbitration. (Doc. 11 at 4-5.) However, under Missouri law, Plaintiff's "challenge to the existence of the [Goodleap Contract] in its entirety because of a lack of assent" on the basis that she never signed the Goodleap Contract "necessarily challenges the existence of any delegation provision it contains." *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 440 (Mo. banc 2020) ("Inherent in the circuit court's order is that [the plaintiff] did not sign the agreement and did not authorize anyone to sign it on her behalf. This is not the case of a signer's failure to read or understand a contract. This is a case of a party being unaware of the existence of any arbitration agreement."); *see also Henry v. Vantage Credit Union*, No. 4:20-cv-01865-SRC, 2021 WL 2187908, at *6 (E.D. Mo. May 28, 2021) (the district court rejected the plaintiff's argument that she had sufficiently challenged an arbitration agreement's delegation clause because no agreement to arbitrate (and thus to delegate) was ever formed because the argument "boil[ed] down to nothing more than

---

[4] Plaintiff has made a timely demand for jury trial on the limited issue of whether the parties agreed to arbitrate their disputes because she made "a *specific* demand for a jury trial on a *specific* issue related to the 'making of the arbitration agreement'" in her response to Goodleap's motion to compel. *Burch*, 861 F.3d at 1349-50 (quoting 9 U.S.C. § 4).

6

arguing that one cannot agree to delegate the arbitrability of claims without first entering into an arbitration agreement" and the district court had already determined that a valid arbitration agreement existed).

In addition, Goodleap endeavors to frame Plaintiff's challenge of the Goodleap Contract as an attack on the contract's validity, rather than its existence, in an attempt to rely on *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440 (2006). In *Buckeye Check Cashing*, the Supreme Court held that an arbitration provision is severable from the remainder of the contract and that "unless the challenge is to the arbitration clause itself, the issue of the contract's *validity* is considered by the arbitrator in the first instance." *Id.* at 445-46 (emphasis added). Goodleap argues that Plaintiff's claims challenge the validity of the Goodleap Contract insofar as: (1) her Fair Credit Reporting Act claim asserts she is not a party to the Goodleap Contract and therefore pulling her consumer report was unpermitted; and similarly, (2) to the extent that Plaintiff's slander of title and quiet title claims turn on her assertion that she is a nonsignatory to the Goodleap Contract and the resulting liens are therefore invalid.

The Court disagrees with Goodleap's characterization and application of *Buckeye Check Cashing*. In the *Buckeye Check Cashing* decision, the Supreme Court distinguished between situations where the contract's validity is at issue (for instance, because of fraudulent inducement or illegality as was claimed in *Buckeye Check Cashing*), from ones where the contract's existence is at issue (for instance, an issue of whether the agreement was ever signed). *Id.* at 444 n.1 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract." (cleaned up)); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010) ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and, as in *Buckeye Check Cashing, Inc. v. Cardegna*, we address only the former."). Here, Plaintiff asserts that she did not sign (let alone ever see) the Goodleap Contract, and therefore, as a non-signatory, she cannot be compelled to arbitrate disputes arising from the Goodleap Contract. "A party's assertion that he did not see or assent to an arbitration agreement is a challenge to the agreement's existence."

7

*Hughes v. Team Car Care LLC*, No. 4:22 CV 1375 CDP, 2023 WL 3452329, at *2 (citing *Theroff*, 591 S.W.3d at 438).[5]

Therefore, the Court must determine whether genuine issues of material fact regarding the existence of an arbitration agreement entitle Plaintiff to a jury trial on the issue. *Nebraska Machinery*, 762 F.3d at 743-744 (citing 9 U.S.C. § 4; *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 979 (10th Cir. 2014) (where the party seeking to avoid arbitration timely demands a jury trial on the issue, the district court must "summarily proceed to [jury] trial on those issues as the [Federal Arbitration Act] instructs")). To establish a genuine issue entitling a party to a jury trial, "an unequivocal denial that the agreement to arbitrate had been made is needed, and some evidence should be produced to substantiate the denial." *Doctor's Assoc., Inc. v. Jabush*, 89 F.3d 109, 114 (2d Cir. 1996) (cleaned up).

Goodleap cites to the following evidence to support the existence of an arbitration agreement: (1) Plaintiff's five electronic signatures[6] on the Goodleap Contract; (2) Plaintiff's acknowledgment that she was present for a portion of the loan discussions with 816 Solar Pro sales representatives; and (3) that, on October 27, 2023, Plaintiff and Mr. Bride[7] acknowledged Plaintiff's status as a borrower.

In response, Plaintiff asserts that she did not sign the Goodleap Contract, and that she has affirmatively alleged as such. Plaintiff cites to her sworn declaration that she "was not present for

---

[5] As previously discussed, the Missouri Supreme Court has held: "Unlike the standard scenario in which there is no dispute about whether a party signed an arbitration agreement, when a party disputes signing, the court must first decide the *existence* of an agreement to arbitrate." *Theroff*, 591 S.W.3d at 437 (emphasis added). In doing so, the Missouri Supreme Court relied on *Buckeye* to distinguish between formation and validity of the container agreement (or, Goodleap Contract): "[B]ecause the issue here is whether [the plaintiff] signed the agreement, the existence of the arbitration agreement was for the circuit court to decide; it found the agreement did not exist." *Id.* (citing 546 U.S. at 444 n.1).

[6] Missouri has adopted the Uniform Electronic Transactions Act, which provides that "an electronic record or electronic signature is attributable to a person if it was the act of the person." Mo. Rev. Stat. § 432.240.1. "The effect of an electronic record or electronic signature attributed to a person under subsection 1 of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise provided by law." Mo. Rev. Stat. § 432.240.2.

[7] Goodleap asserts that Mr. Bride acknowledged Plaintiff as a borrower when he told a Goodleap employee that he checked with his wife about a payment discrepancy "to see if any of that sounded familiar, and she said, 'Absolutely not, because we would not agree to 222 bucks a month.'" (Doc. 13 at 8.) The Court disagrees that this statement establishes that Plaintiff *signed* the contract. While Mr. Bride's statement could potentially support a theory of apparent or actual authority, Goodleap has failed to sufficiently develop such an argument or the record to support it. *See Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454, 457 (Mo. Ct. App. 1984).

8

any electronic signing" and that she "did not sign the Goodleap contract, nor did [she] authorize anyone to use [her] signature on the Goodleap Contract." (Doc. 13 at 4.) Goodleap contends that Plaintiff cannot rely solely on her "self-serving affidavit" to raise a genuine issue of material fact as to the agreement's existence because Plaintiff acknowledged the existence of the Goodleap Contract in a recorded conversation with a Goodleap employee on October 27, 2023. (Doc. 17 at 3.) At the beginning of the phone conversation on October 27, 2023, a Goodleap employee asked Plaintiff if she was available "to go over . . . the loan terms for your new solar from 816 Solar Pro?" (Doc. 24-1, Plaintiff call at 0:19 – 2:27.) Plaintiff replied, "Sure." (*Id.*) However, a full consideration of the October 27, 2023, phone call reveals that Plaintiff stated that she had "no idea" about the basic loan terms, Mr. Bride "would be the person" because Plaintiff "didn't get to see the facts;" moreover, that Plaintiff was not present for a "final decision" concerning the solar system because "after a while, [she] got up and walked away." (*Id.*) These statements corroborate the allegations set forth in Plaintiff's complaint and made in response to Goodleap's motion to compel—specifically, that while Plaintiff was initially a party to the loan discussions, she eventually left the room and did not sign a contract, nor did she authorize anyone to sign on her behalf. The recorded phone call occurred before she or Mr. Bride discovered any of the disputes that they now have with the Goodleap Contract, and months before Plaintiff initiated this suit. Thus, as of October 27, 2023, Plaintiff would have lacked any tactical reason to fabricate her involvement in the solar system discussions (and Goodleap Contract), as the Goodleap employee was merely making initial contact and in order to review the terms of the Goodleap Contract. The Court therefore rejects Goodleap's argument that Plaintiff's only support for her contention that she did not sign the contract is a self-serving affidavit.

However, the record is still sparce—on both sides. Other district court cases analyzing a dispute over the existence of an arbitration agreement generally operate with a more complete factual record. For instance, in *Vargas v. J&J Snack Foods Corporation*, the plaintiff established a genuine issue of fact concerning the existence of an agreement where she denied electronically signing an employment agreement which contained an arbitration agreement during her onboarding process with employer-defendant. No. 22-cv-01187-MTS, 2023 WL 4579325, at *3 (E.D. Mo. July 18, 2023). The plaintiff not only denied signing the employment agreement but also supported her allegation with undisputed, specific evidence outlining how she believed the agreement was executed. *Id.* The plaintiff asserted that an employee of defendant assisted her

9

Case 4:24-cv-00054-RK   Document 24   Filed 08/28/24   Page 9 of 12

with the onboarding process and "this assistance included the oral collection of her personal information, including her address, social security number, email address, and banking information, which [the employee] subsequently entered into [the] onboarding system." *Id.* In the plaintiff's sworn affidavit, she alleged the employee executed the agreement without her knowledge, while the plaintiff "faced the back of the computer while [the employee] completed the onboarding documents." *Id.* The defendant countered that "the onboarding process requires 'much more' information" that what the plaintiff alleged she orally provided the employee; moreover, its employees normally utilized "a self-created, confidential password to complete the onboarding process." *Id.* The plaintiff maintained that a generic password that she did not create is used to access her account on the employer's system.[8] *Id.* In contrast, here, Plaintiff's evidence lacks many details that the Court presumes she would have personal knowledge of, including during what part of the conversation she left the room and what information she was privy to, as well as whether she provided any personal information (Goodleap possessed Mr. Bride's email, and Goodleap was provided Plaintiff's phone number, but not Mr. Bride's) or was asked to sign any documents. Moreover, despite plainly having access to Mr. Bride's personal knowledge of the interaction, Plaintiff does not assert who she believes executed the agreement, or specifically how they would have done so.

Goodleap has produced the Goodleap Contract and DocuSign Certificate of Completion. However, these documents lack any reference to account information or unique or personally identifiable information which Plaintiff would have used or possessed to sign the Goodleap Contract; and they do not otherwise contain evidence of practices typically utilized by 816 Solar Pro sales representatives from which the Court could find an absence of genuine disputes of fact. Conversely, in *Williams v. Wells Fargo Home Mortgage*, the plaintiff was a Wells Fargo employee who denied electronically signing a particular contract, and Wells Fargo responded to those denials with additional evidence, including: (1) a declaration by Wells Fargo representative who completed the plaintiff's new employment paperwork and provided personal knowledge of the plaintiff's specific onboarding process; (2) that the plaintiff signed an offer letter which incorporated by reference the arbitration agreement; (3) a declaration by Wells Fargo Human Resources manager

---

[8] As discussed *infra*, even with this more detailed record, the district court acknowledged that the motion was briefed without the benefit of discovery and it therefore denied defendant's motion to compel arbitration without prejudice, signaling that limited discovery could produce more facts from which the district court could find the absence of a dispute of fact.

attesting to what prospective employees sign on their electronic document system, stating that if prospective employees refuse to electronically sign any of the documents, they could not begin employment, and stating that no other person could have signed or modified the arbitration agreement in plaintiff's place because "prospective employees must select a permanent password and authenticate the electronic signature by entering in the permanent password to electronically sign a document." No. 4:17-cv-00451-RGE-SBJ, 2018 WL 11373979, at *4-5 (S.D. Iowa July 3, 2018). Despite the plaintiff's attestation that she did not sign the contract, the district court found that there were no material facts in dispute as to the existence of a valid arbitration agreement. *Id.* Moreover, Goodleap did not present evidence from either sales representative present with the Brides on August 16, 2023. *Cf. de Moura Castro by Hilario v. Loanpal, LLC*, No. 3:21-cv-1020, 2024 WL 510908 at *18 (D. Conn. Feb. 8, 2024) ("Absent the testimony of [the] salesman, [Goodleap and solar company's] representative who allegedly engaged in all contract negotiations with Plaintiff, the [district court] is left with conflicting evidence regarding contract formation.").

Given that Plaintiff has consistently maintained that she was not in the room for the signing of any contract[9] and the lack of detail provided by Goodleap surrounding the formation of the Goodleap Contract, the Court finds that Goodleap has not met its burden of proving a valid arbitration agreement exists, as Plaintiff has raised a genuine dispute of material fact as to whether she accepted the terms of the Goodleap Contract. With the record before the Court, a reasonable factfinder could conclude that Plaintiff was not the one who affixed her electronic signature to the Goodleap Contract, and therefore, she did not accept its terms.

However, the Court recognizes that the motion to compel was submitted and briefed without either party having the benefit of discovery, which "could eliminate, or, conversely, accentuate any genuine dispute of material fact that exists here." *Vargas*, 2023 WL 4579325, at *3. Therefore, in an effort to preserve judicial economy, Goodleap's motion to compel arbitration is **DENIED without prejudice**. Should discovery eliminate the dispute of material fact described herein, Goodleap may submit a renewed motion to compel arbitration on or before December 3, 2024. Plaintiff's demand for an expedited jury trial on the limited issue of whether the parties agreed to arbitrate disputes is **GRANTED**.

---

[9] Under certain circumstances, non-signatories can be bound by arbitration agreement. However, Goodleap does not assert an alternative argument conceding that Plaintiff is a non-signatory but is otherwise bound by the arbitration agreement.

11

**Conclusion**

Therefore, the Court **ORDERS** that (1) Goodleap's motion to compel arbitration is **DENIED without prejudice**; (2) an expedited jury trial on the limited issue of the existence of an agreement to arbitrate is scheduled for **February 3, 2025**; and (3) any renewed motion to compel arbitration is due on or before **December 3, 2024**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 28, 2024